ROTHENBERG, J.
(concurring in part, dissenting in part).
This case arises out of the property damage suffered by King Cole Condominium Association, Inc. (“the insured”) during Hurricane Wilma in October 2005. At that time, USPlate Glass Insurance Company (“USPlate”) provided the insured with coverage falling into two categories relevant to this appeal. First, USPlate provided principal coverage for damage to the insured’s plate glass windows and sliding glass doors. Second, USPlate provided the insured with supplemental exterior coverage of “up to $75 per covered loss for ... boarding up openings.” At the present time, the insured claims that USPlate has failed to pay $179,096.82 due under the principal portion of the policy, and $5,100 *834 under the supplemental “board-up” provision.
More than two years after the storm, while the parties were in the midst of a peculiar exchange of correspondence (discussed in further detail below), the insured sued USPlate for breach of contract. USPlate moved for summary judgment, arguing that the insured failed to give proper notice and precipitously filed suit. The trial court granted USPlate’s motion, and this appeal followed.
The majority reverses the trial court’s order on the basis that there exist genuine issues of material fact, thus precluding summary judgment. I concur with the majority opinion as to the insured’s claim for $5,100 in “board-up” repairs under the supplemental coverage provided by USP-late. The record reflects multiple and significant issues of fact relating to the question of whether the insured was in compliance with the notice and proof of loss provisions of this limited category of the insured’s claim, and therefore, in part, the trial court’s decision should be reversed.
However, to the extent the majority opinion addresses the insured’s claim for an additional $179,096.82 for damages to its plate glass windows and sliding glass doors under USPlate’s principal coverage, I must respectfully dissent. In the days following Hurricane Wilma, USPlate authorized the insured to retain a glazier of its choosing to complete any necessary glass replacements or repairs. The glazier provided the insured with an estimate, stating that the job should cost $104,928.48. The insured forwarded the estimate to USPlate, which paid the amount in full in two installments.
On January 13, 2006, in a letter to the insured accompanying the second payment, USPlate indicated a belief that it had fulfilled its policy obligations related to the damage caused by Hurricane Wilma. Nevertheless, the letter invited the insured to notify USPlate of any other damages there may have been, offering to reopen the claim should the need arise. USPlate’s letter specifically stated: “This claim is now closed. If you should find any additional damage as a direct result of Hurricane Wilma we will reopen the claim as necessary.” The insured’s initial response to this letter was more than two years of silence.
Finally, on January 29, 2008, counsel for the insured broke that silence by sending USPlate a cryptic letter which asserted that USPlate did “not adequately compensate” the insured. The letter did not provide the amount of compensation that was lacking. The letter did not specify whether the lacking compensation was related to the insured’s principal plate glass damages or to its supplemental “board-up” claims. The letter included no attachments or invoices. Nevertheless, the letter demanded payment of some unknown amount directly to counsel for the insured’s law firm with the law firm as the sole payee. Counsel for the insured, by way of this letter, gave USPlate thirty days to respond.
Less than thirty days later, on February 25, 2008, USPlate responded, asking counsel for the insured to verify that he was authorized to represent the insured and noting that it had “not received any further claim or communication from [the insured]” after paying $104,928.48 more than two years earlier. However, unbeknownst to USPlate, and despite counsel for the insured’s letter providing USPlate with thirty days to respond to its demand for payment of an unspecified amount for unspecified damages, the insured had already filed suit almost three weeks earlier.
The trial court’s order granting summary judgment in favor of USPlate was *835 based on a simple determination — that the insured’s January 2008 letter failed to demonstrate that a genuine issue of material fact existed as to whether the insured complied with the policy by providing USPlate with notice of its additional claims before filing suit. The portion of the trial court’s order that addresses the insured’s current claim for $179,096.82 under the principal category of its coverage should be affirmed. The trial court’s order is subject to de novo review. Rakusin Law Firm v. Estate of Dennis, 27 So.3d 166, 167 (Fla. 3d DCA 2010).
In the aftermath of Hurricane Wilma, the insured notified USPlate that it had suffered damage to its covered property and would require reimbursement for “board-up” repairs and glass replacement. In 2006, the insured presented USPlate with an estimate stating that the glass replacements and repairs would cost $104,928.48. USPlate paid this amount in full, sending a letter along with the payment which stated that if notified of additional.damages, USPlate would continue to work with the insured to resolve the situation. The insured cashed the check and remained silent for more than two years.
In January 2008, when the insured finally got around to corresponding with USP-late, a review of the record reflects that USPlate may have been on notice of the insured’s board-up claim. Therefore, I agree with the majority that as to the $5,100 board-up claim, factual issues persist that prevent summary judgment. However, the undisputed facts reveal that the insured opted to file suit before notifying USPlate in any way that it was claiming $179,096.82 in glass replacement and repair costs beyond the $104,928.48 that USPlate had already paid. In fact, as the insured readily admits, it failed to notify USPlate that it had glass damages beyond the $104,928.48 USPlate paid in 2006, or provide USPlate with a single invoice related to this additional amount until after the lawsuit was filed.
“The failure of an insured to give a timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.” Ideal Mut. Ins. Co. v. Waldrep, 400 So.2d 782, 785 (Fla. 3d DCA 1981). Furthermore, such a breach relieves the insurer of its obligation to defend the subsequent lawsuit. City Mgmt. Group Corp. v. Am. Reliance Ins. Co., 528 So.2d 1299, 1300 (Fla. 3d DCA 1988). Here, the policy clearly provides that prior to bringing suit, the insured was required to notify USPlate of its loss.
When the insured provided USPlate with the estimate from the glazier, USP-late not only paid the amount in full, it informed the insured that it considered the claim closed unless the insured notified USPlate of any additional damages. The insured cashed the check and remained silent for more than two years. Accordingly, USPlate could not know that its insured was claiming nearly $200,000 in additional damages. Once the lawsuit was filed and litigation had commenced, the insured finally saw fit to provide USPlate with documentation indicating that it had paid out and now required reimbursement of an additional $179,096.82 in glass replacements and repairs. I conclude that the legal effect of these undisputed facts was to provide USPlate with a basis upon which to deny recovery of any post-suit claim for losses, and to reheve USPlate of its obligation to defend such a lawsuit. Thus, the trial court’s order granting summary judgment as to the insured’s post-suit claim for $179,096.82 in additional glass replacement and repairs was appropriate.
*836 Therefore, to the extent that the majority opinion addresses the insured’s claim for an additional $179,096.82 for damages to its plate glass windows and sliding glass doors pursuant to USPlate’s principal coverage, I must respectfully dissent. The matter should be remanded to the trial court for a determination of whether the insured provided USPlate with adequate notice and proof of its $5,100 “board-up” claim, but in all other respects, the trial court’s order should be affirmed.